IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VICTOR GALINSKI,                          )
                 Petitioner,             )     No. C 06-6524 CRB (PR)
                               )
     vs.                                 )     ORDER DENYING
                               )     PETITION FOR A WRIT OF
BEN CURRY, Warden,                        )     HABEAS CORPUS
                 Respondent.             )
_____ )

       Petitioner, a state prisoner incarcerated at the Correctional Training

Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. §

2254 challenging the California Board of Parole Hearings' ("BPH") October 12,

2005 decision to deny him parole.

       Per order filed on February 26, 2007, the court found that petitioner's

claim that the BPH's decision finding him not suitable for parole does not

comport with due process appears colorable under § 2254, when liberally

construed, and ordered respondent to show cause why a writ of habeas corpus

should not be granted.  Respondent has filed an answer to the order to show cause

and petitioner has filed a traverse (and a supplement to the traverse).

**BACKGROUND**

On January 26, 1983, petitioner was convicted by a jury in San Diego County superior court of first-degree murder and robbery while armed with a knife, and assault with a deadly weapon. He was sentenced to 25 years to life, plus one year, in state prison with the possibility of parole.

On October 12, 2005, petitioner appeared before the BPH for a parole consideration hearing for the third time. The BPH found him unsuitable for parole and denied him a subsequent hearing for one year.

Petitioner unsuccessfully challenged the BPH's October 12, 2005 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied his petition for review on September 20, 2006, the instant federal petition for a writ of habeas corpus followed.

**DISCUSSION**

A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

2

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. at § 2254(d).  Under this standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.      Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPH's October 12, 2005 decision finding him not suitable for parole, and denying him a subsequent hearing for one year, on the ground that the decision does not comport with due process.  Petitioner claims that the BPH's decision is arbitrary and not supported by some evidence in the record because it is based solely on unchanging factors such as the commitment offense and his pre-commitment criminal history. Petitioner also claims that the BPH must provide him with a fixed parole release date under its sentencing matrices.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed

at this meeting." Cal. Penal Code § 3041(b).  In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime.  See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections."  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole.  Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same).  This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPH] were without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability.  Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904.  Relevant in this inquiry "is whether the prisoner was afforded

4

an opportunity to appear before, and present evidence to, the board." <u>Morales v.</u>
<u>California Dep't of Corrections</u>, 16 F.3d 1001, 1005 (9th Cir. 1994), <u>rev'd on</u>
<u>other grounds</u>, 514 U.S. 499 (1995).  In sum, if the parole board's determination
of parole unsuitability is to satisfy due process, there must be some evidence,
with some indicia of reliability, to support the decision.  <u>Rosas v. Nielsen</u>, 428
F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPH panel afforded petitioner and his counsel
an opportunity to speak and present their case at the hearing, gave them time to
review petitioner's central file, allowed them to present relevant documents and
provided them with a reasoned decision in denying parole.

The panel concluded that petitioner was "not suitable for parole and would
pose an unreasonable risk of danger to society or a threat to public safety if
released from prison."  Oct. 12, 2005 Hr'g Tr. at 62 (Resp't Ex. 4).  It based its
decision on several grounds, including the circumstances surrounding the
offense.  Petitioner and his girlfriend, Patricia White, suspected the victim had
stolen their car.  In front of two witnesses, petitioner and White confronted the
victim about their car and, when he denied knowing its whereabouts, White put a
knife to the victim's throat and petitioner pulled out a gun and threatened to shoot
him.  They robbed the victim of his heroin, wallet, money and watch.  When the
victim began resisting and crying, White dragged him to the floor, handed
petitioner the knife and said, "Go ahead and kill him, we're leaving anyway." <u>Id.</u>
at 10.  Petitioner stabbed the victim three times – once in the back and twice
through the heart, the latter killing the victim.  Petitioner exclaimed that the
victim was dead and proceeded to wrap him in a bedspread and drive away with
the body.  The witnesses immediately called the police and White eventually told

the police where they had buried the victim's body.  Id. at 10-11.[1]

The panel explained that it found that the offense was carried out in a "dispassionate" and "calculated" manner which demonstrated an "exceptionally callous disregard for human suffering."  Id. at 64.  Petitioner and his co-defendant armed themselves, confronted the victim, petitioner fatally stabbed the victim, and then they drove around with the victim in the car, not knowing whether he was dead or alive.  Id. at 62-63.  The panel found that petitioner had a history of unstable relationships with others, including his juvenile and adult criminal history, and that he had "failed to profit from society's previous attempts to correct his criminality" through time in jail and on probation.  Id. at 63-64.  The panel found that although petitioner's institutional behavior "has been good," he had received a counseling memorandum for delaying count just a year earlier.  Id. at 64.  The panel stated that by denying parole, it necessarily disagreed with the psychologist's opinion that petitioner was not a danger to society.  Id. at 64-65.  It nonetheless noted that petitioner was "close . . . very close" to a parole date.  Id. at 65.  It commended petitioner for his positive behavior and recommended that he "firm up" his parole plans by obtaining details about job offers and job possibilities, finish course work for his AA degree and address his INS hold.  Id. at 65-72. .

The state superior court affirmed the decision of the BPH.  The court found "'some evidence' in the record to support the Board's finding that Petitioner is unsuitable for parole."  In re Galinski, No. HC 17533, slip op. at 6 (Cal. Super. Ct. Apr. 12, 2006) (Resp't Ex. 10).  It explained that the board did not rely solely

---

[1]Under petitioner's version of the crime, he stabbed the victim because the victim choked White, and he and White buried the victim after the victim died in the car.  Oct. 12, 2005 Hr'g Tr. at 12-13.  Petitioner explained that he "was young, naive, and very much influenced by his then girlfriend."  Id. at 13.

on petitioner's commitment offense in denying him parole.  Id. at 5.  The board

also considered petitioner's previous criminal record and social history, recent

counseling memorandum, ambiguous parole plans and opposition from the

district attorney's office.  Id. at 5-6.  The court concluded that although the board

weighed these factors against factors tending to support suitability (e.g., general

positive behavior in prison and positive psychological evaluation), it reasonably

determined that "the positive aspects did not outweigh the unsuitability for

parole."  Id. at 6.

The California Court of Appeal similarly affirmed the decision of the BPH

and concluded that the board "considered the proper factors in an individualized

manner and [that] there is some evidence to support the Board's decision."  In re

Galinski, No. D048637, slip op. at 2 (Cal. Ct. App. July 19, 2006) (Resp't Ex.

12).  The court noted that in addition to the circumstances of the commitment

offense and petitioner's criminal history, the board was properly concerned about

"ambiguities in [petitioner's] parole plans, including the lack of specific

information about the job offer from the landscaper and about whether

[petitioner] will be deported to England upon his parole."  Id.

The Supreme Court of California denied review.

The state courts' rejection of petitioner's due process claim was not

contrary to, or involved an unreasonable application of, the Hill standard, or was

based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

The BPH's October 12, 2005 decision to deny petitioner parole after his third

parole consideration hearing is supported by some evidence in the record and that

evidence bears some indicia of reliability.  See, e.g., Rosas, 428 F.3d at 1232-33

(upholding denial of parole based on gravity of offense and psychiatric reports);

Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of

offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense and need for further psychiatric treatment).  The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPH]." Hill, 474 U.S. at 455-56 (emphasis added).  There is – the facts surrounding the crime reasonably suggest that it was carried out in a cruel and callous fashion; petitioner has a criminal history which includes prior convictions for theft, drug and alcohol related crimes, and resisting arrest; and his parole plans lacked specific details about job offers and job possibilities.  Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability).  Although there were factors tending to support suitability, it is not up to this court to "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).  The panel's legitimate concern with the facts surrounding the commitment offense, petitioner's recidivism and ambiguous parole plans constitutes some evidence under Hill in support of the board's determination that petitioner posed an unreasonable risk of danger to society if released from prison.  See Hayward v. Marshall, 512 F.3d 536, 543 (9th Cir. 2008) (test is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates a prisoner's release unreasonably endangers public safety).

Petitioner argues that the BPH's reliance on unchanging factors such as his commitment offense and pre-commitment criminal history in determining that he is not suitable for parole conflicts with the Ninth Circuit's decision in Biggs.  In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the

nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . . and could result in a due process violation." Biggs, 334 F.3d at 916-17. But in the instant case, the BPH did not base its decision solely on petitioner's commitment offense and pre-commitment criminal history. The BPH also found that petitioner's ambiguous parole plans weighed against his release on parole. This finding alone constitutes some evidence under Hill in support of the board's determination that petitioner posed an unreasonable risk of danger to society if released from prison. See Hayward, 512 F.3d at 543.[2]

Petitioner claims that the BPH must provide him with a fixed parole date under California's sentencing matrices. The claim is without merit. The Supreme Court of California has held that the BPH need not evaluate an inmate's crime against the sentencing matrices because unless and until the inmate is found suitable for parole a date for the inmate's release need not be set. In re Dannenberg, 34 Cal. 4th 1061, 1070-01 (2005). This court is bound by the Supreme Court of California's interpretation of California law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal court sitting in habeas).

/

/

/

/

---

[2]The rationale of Biggs also appears inapplicable to petitioner because petitioner's minimum term of 26 years had not yet expired when the BPH denied him parole on October 12, 2005. See Irons v. Carey, 505 F.3d 846, 853-54 (9th Cir. 2007) (noting that Ninth Circuit has upheld denial of parole based solely on commitment offense where prisoners have not yet served minimum number of years required by their sentence).

1

**CONCLUSION**

2          For the reasons set forth above, the petition for a writ of habeas corpus is

3    DENIED.

4          The clerk shall enter judgment in favor of respondent and close the file.

5    SO ORDERED.

6    DATED:  May 15, 2008          _____
                                    CHARLES R. BREYER
7                                   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28